Paul S. Chan - State Bar No. 183406
  pchan@birdmarella.com
Terry W. Bird - State Bar No. 49038
  tbird@birdmarella.com
Fanxi Wang – State Bar No. 287584
  fwang@birdmarella.com
Aparna S. Mathur - State Bar No. 242981
  amathur@birdmarella.com
BIRD, MARELLA, BOXER, WOLPERT, NESSIM,
DROOKS, LINCENBERG & RHOW, P.C.
1875 Century Park East, 23rd Floor
Los Angeles, California 90067-2561
Telephone: (310) 201-2100
Facsimile: (310) 201-2110

Attorneys for Plaintiffs GLOBALVISION
SYSTEMS, INC., AI OASIS, INC.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| GLOBALVISION SYSTEMS, INC., a California corporation; AI OASIS, INC. a California corporation. | CASE NO. |
| | **COMPLAINT FOR:** |
| Plaintiffs, | **1) BREACH OF CONTRACT;** |
| vs. | **2) COPYRIGHT INFRINGEMENT;** |
| CADENCE BANK, f/k/a BANCORPSOUTH BANK, | **3) VIOLATION OF CALIFORNIA PENAL CODE § 502;** |
| Defendant. | **4) TRADE SECRET MISAPPROPRIATION (VIOLATION OF THE DEFEND TRADE SECRETS ACT);** |
| | **5) TRADE SECRET MISAPPROPRIATION (VIOLATION OF THE CALIFORNIA UNIFORM TRADE SECRETS ACT);** |
| | **JURY TRIAL DEMANDED** |

3895616.2

Plaintiffs GlobalVision Systems, Inc. ("GlobalVision") and AI Oasis, Inc. ("AI Oasis") (collectively, "Plaintiffs") bring this action against Defendant Cadence Bank f/k/a BancorpSouth Bank ("Cadence Bank" or "Defendant"), and allege as follows:

## NATURE OF CASE

1.      This is an action for damages and injunctive relief necessitated by Defendant's intentional contract breaches and repeated misappropriations of Plaintiffs' trade secrets. Defendant surreptitiously helped unauthorized third-parties access Plaintiffs' proprietary and copyrighted software, in flagrant violation of Defendant's limited license to access the software, which by its terms has already terminated.

2.      GlobalVision is a leading provider of Anti-Money Laundering ("AML") and Counter Financing of Terrorism ("CFT") software for financial institutions.  GlobalVision's flagship software product, Patriot Officer, enables financial institutions, such as Defendant, to detect, investigate, and report potential money launderers and terrorists to the Financial Crimes Enforcement Network ("FinCEN") through the filing of Suspicious Activity Reports ("SARs"), and to ensure compliance with the Bank Secrecy Act ("BSA"), USA Patriot Act, and other government regulations within the highly-regulated financial industry.  On or about February 12, 2019, AI Oasis acquired all intellectual property rights to GlobalVision's Patriot Officer software.

3.      Under the parties' Software License Agreement ("SLA" or "Agreement"), GlobalVision provided Defendant with high level support services and Patriot Officer, a superior banking software product that helped Defendant pass regulatory examinations since 2013.  But in return, Defendant willfully disregarded its contractual obligations to GlobalVision and repeatedly infringed GlobalVision's intellectual property rights.

4.      On information and belief, without GlobalVision's knowledge or

2

permission, Defendant deliberately created special user IDs for third-party vendors and surreptitiously gave Plaintiffs' main competitors in the industry access to GlobalVision's proprietary software. After the parties' license agreement expired by its terms, instead of returning the Patriot Officer software and other intellectual property in compliance with the Agreement, Defendant initiated a meritless lawsuit in Texas in an attempt to keep and use the software. In particular, Defendant relied on an unsworn declaration and inaccurate information to file a Petition and Application for Temporary Restraining Order, and Temporary and Permanent Injunction against Plaintiffs on October 4, 2023, in Harris County, Texas (*Cadence Bank v. GlobalVision Systems, Inc. and AI Oasis, Inc.*, Cause No. 2023-68669).[1]

5.     Notwithstanding Defendant's allegations in the Texas action, Defendant is in breach of the Agreement, and is now engaging in infringing and unlawful conduct in violation of Plaintiffs' intellectual property and contractual rights.

6.     Plaintiffs are entitled to injunctive relief, recovery of its intellectual property, recovery of actual and/or statutory damages, attorneys' fees, punitive damages, and other remedies as a result of Defendant's infringing and unlawful conduct.

## JURISDICTION AND VENUE

7.     This Court has subject matter jurisdiction over the claims set forth in this Complaint pursuant to the Copyright Act of 1976, 17 U.S.C. §§ 501, *et seq.*, the Defend Trade Secrets Act, 18 U.S.C. §§ 1836, *et seq.*, and 28 U.S.C. §§ 1331 and 1338(a).

8.     This Court has supplemental jurisdiction over claims in this Complaint that arise under state statutory and common law pursuant to 28. U.S.C. § 1367(a) in

---

[1]     Plaintiffs have removed the Texas action to federal court and have moved dismiss it for lack of personal jurisdiction.

that the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

9.     Venue is proper under 28 U.S.C. § 1391(b), and more specifically, assignment to the Central District of California is proper because it is where a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred. Defendant, a Mississippi-based financial institution, reached out to California-based GlobalVision; negotiated, signed, and entered into an agreement governed by the laws of the State of California for limited use of Patriot Officer product and services provided exclusively from California; and committed wrongful acts and omissions as described herein, with resulting irreparable injury, damages, harm, loss and other consequences in California.  Defendant willfully infringed copyrights owned by GlobalVision, and more recently AI Oasis, which Defendant knew to be located in the County of Los Angeles.  Jurisdiction and venue are also proper in this Court under California Penal Code§ 502, which provides:  "For purposes of bringing a civil or criminal action under this section, a person who causes, by any means, the access of a computer, computer system, or computer network in one jurisdiction from another jurisdiction is deemed to have personally accessed the computer, computer system, or computer network in each jurisdiction."  Defendant has been accessing Plaintiffs' computer network in California without authorization, and based on information and belief, has downloaded confidential and proprietary data from GlobalVision's computer network, going back to at least March 1, 2023.

10.     This Court has personal jurisdiction over Defendant because Defendant availed itself to the privileges of contracting with a company conducting business in the State of California, many of the facts and circumstances giving rise to this action took place primarily in Los Angeles County, California, and Plaintiffs' claims arise from Defendant's contacts in California.

## THE PARTIES

11.     GlobalVision is a corporation organized and existing under the laws of

1  the State of California with its principal place of business in Chatsworth, California.

2  GlobalVision is, and at all times mentioned was, authorized to conduct business in

3  the State of California.

4      12.    AI Oasis is a corporation organized and existing under the laws of the

5  State of California with its principal place of business in Glendale, California.  AI

6  Oasis is, and at all times mentioned herein was, authorized to conduct business in

7  the State of California.

8      13.    On information and belief, Cadence Bank is a Mississippi corporation.

9  On information and belief, Cadence Bank, N.A. merged into BancorpSouth Bank,

10  and then BancorpSouth Bank changed its name to Cadence Bank.  On information

11  and belief, Cadence Bank holds approximately $51 billion in assets with over 350

12  branch locations.

13                    **GENERAL ALLEGATIONS**

14                    **GlobalVision's Business**

15      14.    Founded in 1986, GlobalVision is a leading provider of risk

16  management and regulatory compliance software solutions for banks and other

17  financial institutions.  Headquartered in Los Angeles, California, GlobalVision

18  helped pioneer the financial intelligence software industry with its Patriot Officer

19  software products, which is endorsed as the **#1** BSA/AML/CFT/WATCHLIST

20  Solution by the largest bankers associations across the U.S.  These software

21  products allow banks to monitor and detect fraudulent or suspicious financial

22  transactions involving bank funds, as required by various federal anti-money

23  laundering, counter terrorist financing, anti-fraud laws and regulations, including the

24  Bank Secrecy Act ("BSA"), the USA Patriot Act, the Fact Act, the Unlawful

25  Internet Gambling Enforcement Act, and requirements imposed by the Office of

26  Foreign Assets Control and the Financial Crimes Enforcement Network.  The

27  software utilizes artificial intelligence technology to allow a bank to analyze and

28  conduct a risk assessment with respect to each of its customers' financial

1    transactions, and screen for and identify potentially fraudulent or suspicious

2    activities across all transaction and product lines within the institution.

3          15.     On or about February 12, 2019, AI Oasis acquired the intellectual

4    property rights to certain GlobalVision products including Patriot Officer, which AI

5    Oasis used (in part) to create its own United A.I. Network software program.  The

6    United A.I. Network software program provides the most comprehensive and

7    advanced solutions to financial institutions to enable them to perform their BSA/

8    AML/ CTF/ WATCHLIST/ Anti-Fraud/ Anti-Financial Crimes/ Consumer

9    Protection/ Cybercrimes Prevention operations.  The Patriot Officer software

10    program and related materials are highly valuable, were securely maintained at

11    GlobalVision and AI Oasis at all relevant times and were not disclosed to any third

12    parties except licensed customers who are contractually bound to maintain the

13    confidentiality of GlobalVision and/or AI Oasis' software and related materials.

14    According to GlobalVision's and AI Oasis's intellectual property rights acquisition

15    agreement, GlobalVision's technical team would continue to support AI Oasis'

16    clients after they signed a software license agreement with AI Oasis.

17                  **Confidential, Proprietary And Trade Secret Information**

18          16.     Both GlobalVision and AI Oasis have invested substantial financial and

19    other resources in the research, development, and operation of their respective

20    business to provide high-quality product and service offerings to their respective

21    customers.  GlobalVision's success in the highly competitive anti-money laundering

22    and anti-fraud industry is a result of decades of hard work, ingenuity and significant

23    amount of investment in R&D.  Competitor companies that provide competing

24    software to financial institutions have been valued in the billions of dollars.

25    GlobalVision's and AI Oasis's confidential, proprietary, and trade secret

26    information and other intellectual property are the essence of their respective

27    businesses.

28          17.     At all relevant times, the proprietary Patriot Officer software and

computer programs, including the underlying architecture, algorithms, user interface, and other attributes, were nonpublic, provided only to current customers of GlobalVision and/or AI Oasis under strict confidentiality and return of property restrictions, and were not known to its competitors, thereby providing Plaintiffs with a competitive advantage.

18.    GlobalVision and AI Oasis each take extensive steps to protect their trade secrets, proprietary information, confidential information, business information, and other intellectual property by, among other safeguards: requiring their employees, current and prospective customers, and business partners to execute written agreements containing non-disclosure and return of property provisions; password-protecting computers; limiting access to data and information; marking documents confidential; and enforcing non-disclosure agreements.

### The Parties' Agreements

19.    On October 4, 2012 GlobalVision entered into a written, integrated Software License Agreement ("Agreement" or "SLA") with Defendant, granting it a limited and nonexclusive license to use the Patriot Officer software, pursuant to the terms and conditions of the Agreement, as part of the bank's BSA/AML/WATCHLIST compliance functions.  First and Second Amendments were entered into on April 12, 2018 and April 13, 2021, respectively.  *See* Exhibits A-C.

20.    The First Amendment to the Agreement contains a termination provision stating that the existing agreement shall remain in effect until October 4, 2023 and shall automatically renew for successive one year periods, unless either party gives written notice to the other party of its desire not to renew the Agreement at least six (6) months before the end of the initial or then-current renewal term.  *See* Exhibit B, § 2.

21.    The Second Amendment to the Agreement granted Cadence Bank a limited  use of Patriot Officer on a test server.  *See* Exhibit C.

22.    The Agreement granted Defendant a nonexclusive, nontransferable license to use GlobalVision's software in exchange for designated license payments. The Agreement states that notwithstanding the license to use, GlobalVision "is the owner of the [software]… and of all patent copyright, trademark, and other intellectual property rights, therein . . . ."  *See* Exhibit A.

23.    Pursuant to the Agreement, from its headquarters in Los Angeles, California, GlobalVision remotely installed the Patriot Officer software on the Defendant's servers.  Subsequent software upgrades and trade secret and confidential information updates to the system were also performed remotely by GlobalVision servers and engineers in Los Angeles.

24.    Given the highly competitive nature of the industry and GlobalVision's legitimate business interests in protecting its substantial investment in its products, services, and trade secrets and other intellectual property, GlobalVision's Agreement with Defendant contains a confidentiality and non-disclosure provision. *See* Exhibit A, § 9.  The confidentiality obligations survive the termination of the Agreement.  *See* Exhibit A, § 9.  The confidentiality provisions define confidential information to include all "product information, pricing information, data specifications, trade secrets, computer data" and states, among other things, that Defendant "shall hold in confidence and shall not disclose, publish, release, transfer or otherwise provide access to confidential or proprietary information of [GlobalVision] to any person or persons outside the [Defendant's] organization," and the Defendant "shall not use the confidential or proprietary information of the [GlobalVision] for any purpose other than for the purpose of this Agreement." *Id*.

25.    The Agreement states that Defendant, as licensee, receives a "non-exclusive, non-transferable license to use the [Patriot Officer software] Product and related documentation solely for its own internal business operation or management purposes in accordance with the terms and conditions defined in this Agreement" and Defendant "may **not** sell, loan, share, rent, time-share, sublease, assign, or in

any way transfer or **allow access to the [Patriot Officer software] product or its related documentation by any third party without prior written consent by [**GlobalVision]."  The Agreement permitted Defendant to make one, and only one, copy of the licensed software for disaster recovery purposes.  *See* Exhibit A, § 1.

26.     The Agreement prohibits Defendant from developing or assisting another to develop a software system with a function similar to the functions of a GlobalVision product.  *See* Exhibit A, § 1.

27.     The Agreement expressly prohibits any post-termination retention of GlobalVision software.  In particular, the Agreement requires Defendant to return to GlobalVision the licensed software within thirty (30) days from the termination of the Agreement.  *See* Exhibit A, § 18.  Currently, the Defendant is in illegal possession of the Patriot Officer software.

28.     On September 22, 2023 AI Oasis entered into a Mutual Non-Disclosure Agreement ("MNDA") with Defendant, which prohibited Defendant from "provid[ing] access to information designated by disclosing party to be confidential or proprietary [which by the parties' definition included related material, documentation and copies of the Patriot Officer software] to any person or persons outside their respective organizations."  This agreement is effective for five years and the duty to maintain confidentiality survives termination.  *See* Exhibit D, §§ 2,9.

29.     GlobalVision's Patriot Officer software was used by Defendant for Bank Secrecy Act compliance, Anti-Money Laundering monitoring, Watchlist compliance, and Counter-Terrorist monitoring for 11 years. Before the Agreement ended, Defendant had acquired (or merged with) two banks. Although some banks have difficulty passing their BSA examination after mergers, Plaintiffs' years of diligent service and its flagship Patriot Officer software helped Defendant pass BSA examinations successfully.  Unfortunately, Defendant repaid Plaintiffs by breaching the parties' contract, helping competitors access Patriot Officer, and misappropriating Plaintiffs' trade secrets.

**Proprietary "Blacklists" And "Warning Lists"**

30.     As part of its business relationship with Defendant, GlobalVision also made available to Defendant its proprietary "Blacklists" and "Warning Lists" during the term of the SLA.

31.     GlobalVision invests substantial resources, time, and effort into developing and preparing its "Blacklists" and "Warning Lists." GlobalVision prepares and frequently updates its "Blacklists" and "Warning Lists" based on analyses of its own data. The lists are confidential and may be accessed by customers only during the term of their license agreements. The information contained in these lists derives independent economic value from not being generally known to, or readily ascertainable by proper means by, the public; other persons can obtain economic value from its disclosure or use; and it is the subject of significant efforts to maintain its secrecy.

32.     The information contained in GlobalVision's "Blacklists" and "Warning Lists" is crucial to GlobalVision's financial institution customers, as the lists enable them to take action with respect to clients identified on the lists and the risks associated with them. GlobalVision's lists are therefore extremely valuable and are kept confidential; access is restricted to current customers only, subject to their non-disclosure obligations in their licensing agreements.

33.     While it was a GlobalVision customer, Defendant was permitted to access and download the lists through Global Vision's File Transfer Protocol ("FTP") site. Upon GlobalVision's termination of the Agreement, Defendant was no longer authorized to access and download the lists.

**GlobalVision Terminates The Software License Agreement**

34.     On March 29, 2023, GlobalVision timely provided Defendant written advance notice ("Notice"), via email and FedEx, of GlobalVision's decision to not renew the Agreement. The notice was delivered on March 31, 2023 via FedEx with proof of delivery from FedEx. On March 30, 2023, GlobalVision emailed the same

Notice to Defendant again. The Notice was delivered more than six (6) months in advance of the required time pursuant to the First Amendment to the Agreement, thereby preventing the auto-renewal of the Agreement. *See* Exhibit E.

35.     By its terms, the Agreement was properly terminated on October 4, 2023 pursuant to GlobalVision's March 29, 2023 written Notice to Defendant of its decision not to renew, and therefore GlobalVision had no continuing obligation to perform under the Agreement.

### Defendant's Wrongful Conduct

36.     Pursuant to paragraph 18 of the Agreement, "[u]pon termination of this Agreement by any party for any reason, the Licensee [Defendant] will **return all software** and related materials to GVS [Plaintiff] along with a signed attestation thereto **within 30 days of the termination**."  After 11 years of exceptional support and diligent service to Defendant, instead of returning all the software to Plaintiffs, as it was contractually required to do upon termination of the Agreement, Defendant instead attempted to retain and continue using the software without paying for it, by filing a Petition and Application for Temporary Restraining Order, and Temporary and Permanent Injunction against Plaintiffs on October 4, 2023, in Harris County, Texas, seeking, among other things, injunctive relief allowing its continued use of the licensed software through October 5, 2024.  Defendant ignored GlobalVision's instruction that Defendant's continued use and/or possession of the software after the Agreement's termination date was unlawful.

37.     In addition to failing to return the now out-of-license Patriot Officer software, Plaintiffs have recently become informed and now believe that Defendant surreptitiously created special user IDs, and intentionally helped and allowed at least two separate third-party vendors that are Plaintiffs' direct competitors to access Patriot Officer—without Plaintiffs' permission, and in flagrant violation of the Agreement, as well as the MNDA—going back to at least March 1, 2023. Defendant's willful misconduct and misappropriation of trade secrets have

irreparably harmed Plaintiffs and diminished Plaintiffs' market value enormously in the banking BSA/AML/CTF/WATCHLIST/Risk Management software industry.

38.    Plaintiffs are further informed and believe that Defendant has made unauthorized copies of the its licensed software product that can be made operational, which copies would be extremely valuable to a competitor who could, if provided such a copy or copies of the software, use, replicate, or exploit it, including its trade secrets, proprietary information, confidential architecture, algorithms, user interface, and other attributes.

39.    Plaintiffs are informed and believe that the copies of the licensed software that Defendant has made and continues to make, which may be accessed and made operational, can be sold or provided by the Defendant to other financial institutions for their use.

40.    Plaintiffs are informed and believe that, despite the termination of the Agreement, Defendant remains in possession of GlobalVision's "Blacklists" and "Warning Lists," and, without permission, continues to access, after the Agreement's termination date, GlobalVision's FTP site for its "Blacklists" and "Warning Lists" for the purpose of unlawfully accessing and collecting GlobalVision's proprietary data.

41.    GlobalVision is informed and believes that the "Blacklists" and "Warning Lists" that Defendant remains in possession of are extremely valuable to a competitor who could, if provided such lists, use, replicate, or exploit the lists without having to expend the substantial money, time, or other resources that GlobalVision has invested.

42.    Defendant's wrongful conduct has caused and continues to cause significant and irreparable harm to Plaintiffs.  GlobalVision estimates the lost enterprise value associated with Defendant's misconduct to be in the range of multiple billions of dollars.

**FIRST CLAIM FOR RELIEF FOR BREACH OF CONTRACT**

43.     GlobalVision hereby incorporates by reference and realleges each of the allegations above as though fully set forth in their entirety in this claim for relief.

44.     The Agreement executed by Defendant and GlobalVision constitutes a valid and enforceable written contract.

45.     GlobalVision performed all of the duties and obligations it agreed to and owed Defendant under the Agreement.

46.     Under the Agreement, Defendant was prohibited from (1) allowing access to Patriot Officer or its related documentation by any third party without prior written consent by GlobalVision, or (2) using or disclosing GlobalVision's confidential information, proprietary information, intellectual property, and trade secret information.  Additionally, (3) Defendant was required to return GlobalVision's software and related information, including any confidential, proprietary, and trade secret information in its possession, custody, or control upon termination of the Agreement.

47.     Under the Agreement, Defendant was also prohibited from developing or assisting any entity in developing a software system with a function similar to the functions of a GlobalVision product.

48.     GlobalVision is informed and believes that Defendant breached the terms of the Agreement (1) by intentionally creating special user IDs and surreptitiously allowing at least two separate third-party vendors / competitors to access Patriot Officer without GlobalVision's permission; (2) by downloading confidential and proprietary data from GlobalVision's computer network going back to at least March 1, 2023; and (3) by failing to return and continuing to use GlobalVision's confidential, proprietary, and trade secret information, including the Patriot Officer software program and GlobalVision's product information, as well as its "blacklists" and "warning lists."

49.     As an actual and proximate result of Defendant's breaches, GlobalVision has been irreparably injured, and continues to face irreparable injury

and harm.  As a result, Plaintiffs have significantly lost the value of their intellectual property, trade secrets, and confidential and proprietary information, for which a remedy at law is inadequate.

50. As an actual and proximate result of Defendant's breaches, GlobalVision has suffered actual and/or consequential damages in an amount to be proven at the time of trial.  GlobalVision estimates the lost enterprise value associated with Defendant's misconduct to be in the range of multiple billions of dollars.

51. GlobalVision also seeks injunctive relief for Defendant's breaches of the parties' Agreement, including the return of its software and its related information, and intellectual property.

## SECOND CLAIM FOR RELIEF FOR COPYRIGHT INFRINGEMENT

52. Plaintiffs hereby incorporate by reference and reallege each of the allegations above as though fully set forth in their entirety in this claim for relief.

53. The Patriot Officer software contains significant original expressions constituting copyrightable subject matter under the laws of the United States.

54. At all times Plaintiffs complied in all respects with the United States Copyright Act 17 U.S.C. § 101 *et seq.* ("Copyright Act") and received from the Register of Copyrights certificates of registration, dated and identified as follows: November 5, 2019 - TX 8-794-069, TX 8-795-805, TX 8-795-808, TX 8-795-823, TX 8-797-461, TX 8-796-462, TX 8-797-463, TX 8-797-466, TX 8-797-469, TX 8-797-470, TX 8-797-472, TX 8-797-475, TX 8-797-476, TX 8-797-478, TX 8-797-480.

55. Plaintiffs are entitled to all of the exclusive rights of a copyright owner with-respect to the Licensed Software, and owns all rights thereto.

56. On information and belief, Defendant has committed copyright infringement by continuing to access and use the licensed software after October 4, 2023.

57.     On information and belief, Defendant has engaged in infringing conduct by making regular, unauthorized copies and backups of the licensed software.

58.     On information and belief, as averred above, the Defendant has used the licensed software in manners that exceed the scope of any licenses granted to Defendant.  By these actions, Defendant is liable for copyright infringement, either as a direct infringer, and/or as a contributory infringer or vicarious infringer in inducing others to infringe Plaintiffs' copyrights.

59.     By virtue of Defendant's infringing conduct, Plaintiffs are entitled to an injunction during the pendency of this action and permanently restraining Defendant, its managers, members, officers, agents and employees, and all persons acting in concert with it, from engaging in further such acts in violation of the copyright laws.

60.     By virtue of Defendant's infringing conduct, Plaintiffs are entitled to an award of its actual damages, in an amount to be proven at time of trial, but which Plaintiffs believe to be in excess of $2.4 million per unauthorized copy.

61.     By virtue of Defendant's infringing conduct, Plaintiffs are entitled to recover any gains, profits, and advantages obtained by the Defendant as a result of the acts of infringement herein alleged.

62.     By virtue of Defendant's infringing conduct, Plaintiffs are entitled to an award of statutory damages in the maximum amount provided by law.

63.     By virtue of Defendant's infringing conduct, Plaintiffs are entitled to an award of costs and reasonable attorneys' fees incurred in this action.

## THIRD CLAIM FOR RELIEF FOR VIOLATION OF CALIFORNIA PENAL CODE § 502

64.     Plaintiffs hereby incorporates by reference and reallege each of the allegations above as though fully set forth in their entirety in this claim for relief.

65.     Plaintiffs specifically do not seek relief for the misappropriation of

trade secrets under this claim but rather seek to enforce their statutory rights under California Penal Code Section 502.

66.     California Penal Code Section 502 defines its statutory violations as criminal acts with criminal penalties.

67.     Although Penal Code Section 502 imposes criminal penalties for certain computer-related crimes, it also creates a private right of action that entitles the owner or lessee of the computer, computer system, computer network, computer program, or data who suffers damage or loss by reason of a violation of any of the provisions of Section 502(c) to bring a civil action against the violator for compensatory damages and injunctive relief or other equitable relief.  *See* Cal. Penal Code § 502(e).

68.     When the Legislature enacted Penal Code Section 502, it intended to expand the degree of protection afforded to individuals, businesses, and governmental agencies in California from tampering, interference, damage, and unauthorized access to lawfully created computer data and computer systems.  Penal Code Section 502(a) provides in relevant part:

> The Legislature finds and declares that the proliferation of computer technology has resulted in a concomitant proliferation of computer crime and other forms of unauthorized access to computers, computer systems, and computer data.
> The Legislature further finds and declares that protection of the integrity of all types and forms of lawfully created computers, computer systems, and computer data is vital to the protection of the privacy of individuals as well as to the well-being of financial institutions, business concerns, governmental agencies, and others within this state that lawfully utilize those computers, computer systems, and data.

69.     California Penal Code Section 502(j) also provides that jurisdiction

1   exists at the location of the targeted computer, computer system, or computer

2   network:

> For purposes of bringing a civil or a criminal action under this
> section, a person who causes, by any means, the access of a
> computer, computer system, or computer network in one
> jurisdiction from another jurisdiction is deemed to have
> personally accessed the computer, computer system, or computer
> network in each jurisdiction.

9   98.   Plaintiffs are the owners of software, data, computers, computer

10  systems, and computer networks in or connected to California, which Plaintiffs use

11  for purpose of conducting its California-based business.

12  99.   GlobalVision provided Defendant access to its data subject to strict

13  compliance with the Agreement.  Such data includes, but is not limited to,

14  GlobalVision's proprietary software, "Blacklists," and "Warning Lists."

15  100.   California Penal Code Section 502(c)(l) creates a private right of action

16  against anyone who knowingly accesses and without permission alters, damages,

17  deletes, destroys, or otherwise uses any data, computer, computer system, or

18  computer network in order to either (A) devise or execute any scheme or artifice to

19  defraud, deceive, or extort, or (B) wrongfully control or obtain money, property, or

20  data, regardless of whether the defendant has accessed any of the plaintiff's

21  computers.

22  101.   California Penal Code Section 502(c)(2) creates a private right of

23  action against anyone who knowingly accesses and without permission takes,

24  copies, or makes use of any data from a computer, computer system, or computer

25  network, or takes or copies any supporting documentation, whether existing or

26  residing internal or external to a computer, computer system, or computer network.

27  102.   Defendant has violated and continues to violate California Penal Code

28  Section 502(c)(l) by knowingly copying (backing up) and without permission

storing, using, or making multiple copies of Plaintiffs' data to devise or execute a scheme to defraud or deceive, or to wrongfully control or obtain money, property, or data.

103.   Defendant has violated and continues to violate California Penal Code Section 502(c)(2) by knowingly and without permission accessing, taking, copying, or making use of data from Plaintiffs as alleged herein.

104.   In taking the actions alleged above, Defendant has violated California Penal Code Section 502.

105.   As an actual and proximate result of Defendant's wrongful conduct, Plaintiffs have suffered losses including, but not limited to, the investigation costs associated with identifying the extent of Defendant's wrongful conduct and attempting to recover the wrongfully retained and copied data, including by hiring attorneys, among other losses.  Plaintiffs reasonably and necessarily incurred these expenditures to verify that its computer systems, computer network, computer programs, and data were or were not altered, damaged, or deleted by Defendants' conduct.  Plaintiffs continue to suffer these losses.

106.   As a direct and legal result of Defendant's unlawful conduct within the meaning of California Penal Code Section 502, Plaintiffs have suffered a significant amount of recoverable damages in an amount subject to proof at trial.

107.   Plaintiffs are informed and believes and thereon allege that Defendant has retained and copied some or all of Plaintiffs' property and data, including proprietary software, "blacklists," and "warning lists," and other information that Defendant obtained from its unlawful conduct.  Plaintiffs have suffered irreparable injury from these acts, and due to the continuing threat of such injury, has no adequate remedy at law.  Accordingly, Plaintiffs are entitled to injunctive relief and other equitable relief, including, without limitation, permanent injunctive relief, restitution, and disgorgement of any and all profits or other benefits that Defendant has obtained in connection with its illegal conduct.

108.   Plaintiffs are informed and believe and based thereon allege that Defendant, in doing the things herein alleged, acted willfully, maliciously, oppressively and despicably with the full knowledge of the adverse effect of its actions on Plaintiffs, and with willful and deliberate disregard of the consequences to Plaintiffs.  By reason thereof, Plaintiffs are entitled to recover punitive damages from Defendant in an amount to be determined at the time of trial.

109.   Pursuant to California Penal Code Section 502, Plaintiffs are entitled to recover from Defendant its reasonable attorneys' fees.

## FOURTH CLAIM FOR RELIEF FOR MISAPPROPRIATION OF TRADE SECRETS IN VIOLATION OF THE DEFEND TRADE SECRETS ACT (ACTUAL & THREATENED)

110.   Plaintiffs hereby incorporate by reference and reallege each of the allegations above as though fully set forth in their entirety in this claim for relief.

111.   The Defend Trade Secrets Act ("DTSA") defines "trade secret" to include all forms and types of financial, business or economic information, including patterns, plans, compilations, methods, techniques, processes, procedures or programs, if (A) the owner thereof has taken reasonable measures to keep such information secret; and (B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, the public.  *See* 18 U.S.C. §§ 1836, 1839.

112.   Plaintiffs are informed and believe that the confidential information improperly used or disclosed by Defendant includes Plaintiffs' proprietary software and computer programs, proprietary data, product information, and other contract terms, all of which constitute trade secrets within the meaning of the DTSA.  Such information derives independent economic value from not being generally known to, or readily ascertainable by proper means by, the public; other persons can obtain economic value from its disclosure or use; and it is the subject of significant efforts to maintain its secrecy.

113.   Plaintiffs are informed and believe that Defendant, in addition to refusing to return the licensed software as required by the Agreement, has accessed and continues to access additional information made available only during the term of the Agreement, which was terminated on October 4, 2023.

114.   As detailed above, Plaintiffs take reasonable and appropriate measures to protect the confidentiality of the above-described trade secrets.

115.   Defendant knew or should have known that Plaintiffs' trade secrets (a) are confidential; (b) were acquired under circumstances giving rise to a duty to maintain their secrecy or limit their use; (c) were developed or acquired by Plaintiffs at great expense and effort; (d) are maintained as confidential and are not generally available to the public or Plaintiffs' competitors; (e) would provide significant benefit to a competitor seeking to compete with Plaintiffs; and (f) are critical to Plaintiffs' ability to conduct its business successfully.

116.   The information that Defendant has misappropriated or threatens to misappropriate describes and relates to Plaintiffs' highly confidential business, and technical information, which involve products and services that are sold in, utilized throughout, and/or travel through interstate commerce.

117.   Should Defendant continue to disclose or threaten to disclose, or use or threaten to use, Plaintiffs' trade secrets, the disclosure and/or use of such information will harm Plaintiffs and their legitimate business interests.

118.   Because Defendant's unlawful misconduct is ongoing and it poses a threat of significant irreparable harm that cannot be compensated by money alone, Plaintiff requests that this Court grant injunctive relief against Defendant from actual or threatened disclosure or utilization of Plaintiffs' trade secrets.

119.   Plaintiffs seek damages, exemplary damages and their attorneys' fees as a result of Defendant's misappropriation of trade secrets. Plaintiffs estimate the lost enterprise value associated with Defendant's unlawful misconduct to be in the range of multiple billions of dollars.

## FIFTH CLAIM FOR RELIEF FOR MISAPPROPRIATION OF TRADE SECRETS IN VIOLATION OF THE CALIFORNIA UNIFORM TRADE SECRETS ACT (ACTUAL & THREATENED)

120.   Plaintiffs hereby incorporate by reference and re-allege each of the allegations contained in the above paragraphs as though fully set forth in their entirety in this claim for relief.

121.   At all relevant times, Plaintiffs were in possession of trade secret information as defined by California's Uniform Trade Secrets Act ("CUTSA"), Civil Code section 3426.1(d).  As provided above, Defendant was given access to and provided Plaintiffs' trade secrets, subject to its continuing confidentiality obligations.

122.   Plaintiffs' proprietary software and computer programs, product, and technical information that it provided to Defendant constitute trade secrets because Plaintiffs, as described herein, derive independent economic value from that information, such information is not generally known nor readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use, and because the information is the subject of reasonable efforts to maintain its secrecy.  Plaintiffs' proprietary BSA/AML/CTF/WATCHLIST software and trade secret information described herein  were not  known to Plaintiffs' competitors until Defendant surreptitiously gave them access without Plaintiffs' permission.

123.   Plaintiffs' proprietary "blacklists" and/or "warning lists" constitute trade secrets, because as described herein, Plaintiffs derive independent economic value from that information, such information is not generally known nor readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use, and because the information is the subject of reasonable efforts to maintain its secrecy.  Plaintiffs' trade secret information described herein was not known to Plaintiffs' competitors until Defendant surreptitiously gave them access without Plaintiffs' permission.

124.   Plaintiffs are informed and believe and therefore allege that Defendant misappropriated Plaintiffs' trade secret information to obtain and/or assist in the development of a competing product and injure Plaintiffs.

125.   Plaintiffs are informed and believe and therefore allege that Defendant did misappropriate and continue to threaten to misappropriate Plaintiffs' trade secrets in violation of CUTSA.

126.   Plaintiffs are informed and believe and therefore allege that Defendant willfully used and disclosed and intends to continue to improperly use or disclose Plaintiffs' trade secrets to others in violation of CUTSA.  This use or disclosure directly violates Defendant's continuing confidentiality obligations in its Agreement with GlobalVision.

127.   By reason of the foregoing, Plaintiffs request that this Court grant preliminary and permanent injunctive relief as requested herein.  Plaintiffs have no adequate remedy at law.  Unless injunctive relief is granted, Plaintiffs will continue to be irreparably harmed and irreversibly injured in a manner not fully compensable by money damages.

128.   As a proximate result of Defendant's misappropriation and threatened misappropriation of Plaintiffs' trade secrets, Plaintiffs have suffered, and will continue to suffer, irreparable harm, as well as damages in an amount to be proven at the time of trial. Plaintiffs estimate the lost enterprise value associated with Defendant's misconduct to be in the range of multiple billions of dollars. Plaintiffs' damages include, but are not limited to, the significant costs incurred by Defendant's unlawful conduct (including investigation and forensic costs), and costs associated with Plaintiffs' employees spending significant time in re-directing their efforts to address Defendant's misappropriation and threatened misappropriation of Plaintiffs' trade secrets.

129.   Defendant's acts of misappropriation and threatened misappropriation have been willful, fraudulent, deliberate, and malicious.  Therefore, Plaintiffs are

entitled to an award of punitive or treble damages and attorneys' fees pursuant to Civil Code sections 3426.3(c) and 3426.4.

### **PRAYER FOR RELIEF**

Plaintiffs GlobalVision Systems, Inc. and AI Oasis, Inc., (collectively, "Plaintiffs") seek judgment in its favor and an Order against Defendant Cadence Bank f/k/a BancorpSouth Bank ("Cadence Bank" or "Defendant") that grants the following relief:

A. Temporarily and permanently enjoining Defendant, and all parties in active concert or participation with it or receiving notice of any injunction, from directly or indirectly using, disclosing, or retaining any of Plaintiffs' confidential, proprietary and/or trade secret information;

B. Temporarily and permanently enjoining Defendant, and all parties in active concert or participation with it or receiving notice of any injunction, from violating its Software License Agreement with GlobalVision by directly or indirectly using, disclosing, or retaining Plaintiffs' software, data, and other property, including any copies of any version of Patriot Officer;

C. Temporarily and permanently enjoining Defendant, and all parties in active concert or participation with it or receiving notice of any injunction, from violating its Agreement with GlobalVision by directly or indirectly copying or making backups of Plaintiffs' software, trade secrets, data, and other property, including any copies of any version of Patriot Officer;

D. Temporarily and permanently enjoining Defendant, and all parties in active concert or participation with it or receiving notice of any injunction, from accessing or attempting to access Plaintiffs' computer network.

E. Ordering Defendant and all parties in active concert or participation

with it or receiving notice of any injunction, to return to Plaintiffs all originals and copies of all software, related materials, including but not limited to any of Plaintiffs' files, data, devices, and/or documents, "Blacklists" or "Warning Lists" in its possession that contain or relate to Plaintiffs' confidential, proprietary, and/or trade secret information;

F.   Ordering Defendant and all parties in active concert or participation with them, to preserve all documents, data, backup software, programs, or scripts, and electronic information, including all backups and copies, and to produce for inspection and imaging all computers, servers, backup devices and other electronic storage devices, cloud-based storage repositories, and email accounts belonging to, under the control of, accessible to, or operated by Defendant related to the claims in this action;

G.   Awarding Plaintiffs compensatory and economic damages;

H.   Awarding Plaintiffs reasonable attorneys' fees and costs;

I.   Awarding Plaintiffs on exemplary and/or punitive damages;

J.   Awarding Plaintiffs an order of restitution against Defendant;

K.   Awarding Plaintiffs restitution for Defendant's unjust enrichment;

L.   Awarding Plaintiffs prejudgment and post judgment interest at the maximum rate provided by law, as applicable, and as an element of the damages Plaintiffs have suffered as a result of the wrongful and illegal acts of Defendant;

M.   Disgorging any profits, financial benefits, or funds Defendant obtained or received as a result of the conduct described herein and as developed at trial; and

N.   Awarding Plaintiffs such further relief as the Court deems necessary and just.

DATED:  October 17, 2023

Paul S. Chan
Aparna S. Mathur
Bird, Marella, Boxer, Wolpert, Nessim,
Drooks, Lincenberg & Rhow, P.C.


By:  _____ */s/ Paul S. Chan* _____
Paul S. Chan
Attorneys for Plaintiffs GLOBALVISION
SYSTEMS, INC., and AI OASIS, INC.